UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DWELLING MANAGEMENT INC., dba TOPLINE PRO, <br><br> Plaintiff, <br><br> v. <br><br> MISSION 8, LLC, and TOPLINE HOLDINGS INC., <br><br> Defendants. | CASE NO.: 23-cv-2593 <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Dwelling Management Inc. dba Topline Pro ("Topline Pro" or "Plaintiff") hereby brings this Complaint against Mission 8, LLC and Topline Holdings, Inc. (collectively, the "Defendants") for unfair competition, trademark infringement, statutory injury to business reputation, and related causes of action by alleging the following:

**PRELIMINARY STATEMENT**

1. Plaintiff Topline Pro is an innovative developer and marketer of customer relationship management ("CRM") software which utilizes generative artificial intelligence ("AI") to help small businesses improve and maintain workflows.  It has been using its distinctive name and trademark, TOPLINE PRO (the "Asserted Mark" or "TOPLINE PRO Mark"), since at least as early as October 2022 in connection with its CRM platform and other services.  Plaintiff has offered and promoted its CRM platform and/or related services under its TOPLINE PRO Mark to thousands of businesses in all fifty states since it adopted the name for its business in fall of 2022.

2. Earlier this month, on or around March 1, 2023, Plaintiff discovered that Defendants had launched a new business under the confusingly similar name, TOPLINE, to sell and market a

CRM product and related services. On information and belief, Defendants chose the infringing mark to trade on Plaintiff's name and mark by confusing customers into believing that Defendants' infringing products were offered or sponsored by Plaintiff. Defendants' conduct is particularly egregious given that Plaintiff had approached Defendants' principal, Mr. Skatell, about purchasing the <topline.com> domain for its CRM platform and related services prior to Defendants' adoption of the nearly identical TOPLINE mark to sell CRM software – Plaintiff's flagship product.

3. Accordingly, Plaintiff brings this action to vindicate, protect, and enforce its valuable intellectual property rights in its well-known and distinctive TOPLINE PRO Mark.

## JURISDICTION AND VENUE

4. This action is for unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for trademark infringement, unfair competition, and deceptive business practices under New York law.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for related state-law claims as well as original jurisdiction under 28 U.S.C. § 1338(b) because the state-law claims are joined to substantial and related trademark claims.

6. Personal jurisdiction exists over Defendants because, on information and belief, they are engaged in, transact, and do business in New York, including having offered and offering infringing services in this District via their <topline.com> website and elsewhere, and having purposely directed their activities to citizens and residents of this District.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claims and/or the property that is the subject of the action occurred or is situated in this District.

## THE PARTIES

8. Topline Pro is a Delaware corporation with its principal place of business in New York, New York.

9. On information and belief, Defendant Mission 8, LLC ("Mission 8") is a Wyoming limited liability corporation with its principal place of business in Sheridan, Wyoming. On information and belief, Mission 8 owns the trademark application for TOPLINE associated with the infringing website, <topline.com>.

10. On information and belief, Defendant Topline Holdings, Inc. ("Topline Holdings") is a Delaware corporation with its principal place of business in Charleston, South Carolina. On information and belief, Topline Holdings owns and operates the infringing website at <topline.com> and offers CRM software and related services under the TOPLINE name.

## FACTS

11. Topline Pro was founded on January 1, 2021 under the name ProPhone. It offers an innovative CRM platform featuring generative AI to assist users with growing and maintaining their businesses.

12. Topline Pro's primary offering is an AI-driven CRM platform that allows users to create custom websites for their businesses along with an application that helps manage social media, customer communications, bookings, customer reviews, contacts, inquiries from potential customers, payments, and more. One of Topline Pro's popular features is ProSite, which uses AI to build and maintain websites for businesses. ProSite maintains websites by automatically publishing new content, providing website support, and syncing information from third-party platforms like Facebook and Google, among other things. Topline Pro's platform also offers a payment feature, which collects payments, as well as sends invoices, receipts, payment requests,

and payment reminders. Topline Pro exclusively offers its services through its website at <toplinepro.com>. Topline Pro offers its platform and related services throughout the United States and abroad.

13. In October 2022, Topline Pro publicly rebranded its business from ProPhone to its current Topline Pro name and has been using the TOPLINE PRO Mark prominently ever since. On August 22, 2022, about a month prior to its name change, Plaintiff approached Mr. Skatell, Defendants' principal, about purchasing the <topline.com> domain name. Mr. Skatell did not agree to sell the domain to Topline Pro, nor did he mention any plans to launch a new business under the name TOPLINE. A true and correct copy of these communications dated August 22, 2022, August 25, 2022, and August 29, 2022 are attached hereto as Exhibit A.

14. On information and belief, up through and until about March 1, 2023, Defendants offered a referral and consultancy business related to economic, state, and federal policy at the <topline.com> domain name, but never any software or software-related services. A true and correct screenshot of Defendants' former website as it appeared on October 5, 2022 captured from <web.archive.org> on March 23, 2023 is attached hereto as Exhibit B.

**Topline Pro's Trademark Rights**

15. Topline Pro has common-law rights in the TOPLINE PRO Mark based upon its first use of the trademark at least as early as October 17, 2022, and its continuous and exclusive use of the TOPLINE PRO Mark in commerce in the United States since at least as early as October 17, 2022. As a result of this continuous and exclusive use and, as discussed below, substantial marketing and promotion, the TOPLINE PRO trademark has become a distinctive identifier of the services offered by Topline Pro.

16.     Plaintiff has been continuously using its TOPLINE PRO mark for its CRM platform and related services since at least as early as October 17, 2022, which is prior to Defendants' use and adaptation of TOPLINE for similar services.

17.     Plaintiff has invested substantial time, effort, money, and resources in the development and marketing of its TOPLINE PRO Mark in conjunction with its CRM platform. As a result, Plaintiff's TOPLINE PRO Mark has become a coveted business tool trusted by more than a thousand businesses across the United States. Plaintiff has a substantial internet presence at <toplinepro.com> which enjoys significant web traffic, and it has numerous five-star reviews on third-party platforms such as Google, Trustpilot, Facebook, and Better Business Bureau.

18.     Topline Pro filed a use-based application to register TOPLINE PRO as a trademark with the U.S. Patent & Trademark Office ("USPTO") on or about March 15, 2023 (U.S. Serial No. 97839503). This application covers CRM-related services such as payment management for quoting and invoicing in Classes 41 and 42. A true and correct copy of the trademark application is attached as Exhibit C.

**Defendants' Unauthorized Use of the TOPLINE Mark**

19.     On information and belief, on or about March 1, 2023, Defendants pivoted away from a referral and consultancy business related to public, economic, state, and federal policy – which did not overlap with Topline Pro's business – to launch a CRM platform to assist businesses with managing websites, sales, payments, and bookings. Defendants' new Topline platform now offers features such as website automation and synchronization, booking and contact management, and payment invoicing and collection.

20.     To the extent Defendants had any existing rights in the TOPLINE name prior to the launch of their CRM business earlier this month, those rights would be limited at most to the public

relations and consultancy-related services formerly offered on the <topline.com> domain.  *See* Exhibit B.

21. On information and belief, Mission 8 owns only a pending trademark application for TOPLINE which covers public relations and policy consulting services in Class 35 (U.S. Serial No. 97396598):

> Referrals in the field of public, economic, and state and federal policy; Business services, namely, procuring qualified and credentialed third-party experts, professionals and other qualified personnel, and documentation and information all on behalf of others; Providing an on-line searchable database featuring referrals in the field of public relations, state and federal policy, and policy news and analysis; Public policy consultancy services

A true and correct copy of the trademark application is attached as Exhibit D.  On information and belief, Defendants collectively do not own any other U.S. trademark applications or registrations for the TOPLINE mark or any mark similar to TOPLINE.

22. On information and belief, Mission 8 and Topline Holdings are affiliated entities, and both cooperated with one another and worked together jointly with respect to the conduct alleged in this Complaint.  This is evidenced by Mission 8 owning the pending trademark application for TOPLINE, while Topline Holdings owns and operates the infringing website at <topline.com>, among other facts.

23. Defendants' unauthorized use of the TOPLINE mark has already caused confusion and deceived members of the public as to the true origin of Defendants' overlapping services.  In fact, Topline Pro has already been approached by potential customers who inadvertently accessed Defendants' <topline.com> website thinking it belonged to Plaintiff.  Members of the public will likely continue to be confused in this manner if Defendants maintain their unauthorized and improper use of the TOPLINE mark.  Defendants' unauthorized use also irreparably injures

Topline Pro by depriving it of the right to control its valuable TOPLINE PRO trademark and the high quality of its services which consumers have come to associate with Plaintiff.

## FIRST CAUSE OF ACTION
## FALSE DESIGNATION OF ORIGIN / UNFAIR COMPETITION

(Violation of Lanham Act § 43(a), 15 U.S.C. § 1125(a))

24. Plaintiff realleges and incorporates by reference the averments of the preceding paragraphs as though fully set forth herein.

25. Defendants' acts described above, including their unauthorized use in commerce of a mark highly similar to Plaintiff's TOPLINE PRO Mark, have caused or are likely to cause confusion, mistake, deception, or misunderstanding as to the source, origin, sponsorship, affiliation, or approval of Defendants' services, and constitute infringement of Plaintiff's TOPLINE PRO trademark, and unfair competition, in violation of common law trademark and unfair competition principles as well as the Lanham Act.

26. Defendants' acts constitute making a false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is likely to cause confusion, mistake, or deception as to the source, origin, sponsorship, affiliation, or approval of Defendants' goods, all in violation of 15 U.S.C. § 1125(a).

27. As a direct and proximate result of Defendants' wrongful acts, Plaintiff has suffered, continues to suffer, and/or is likely to suffer damage to its trademark, business reputation, and good will that money cannot compensate.

28. Unless enjoined, Defendants will continue to use a mark that is confusingly similar to the Asserted Mark and will cause irreparable damage to Plaintiff, its mark, and to the business and good will represented thereby, for which Plaintiff has no adequate remedy at law.

29.     Plaintiff is further entitled to recover from Defendants the actual damages Plaintiff has sustained, is sustaining, and/or is likely to sustain as a result of Defendants' wrongful acts in an amount to be determined at trial.

30.     Defendants' use of a mark that is confusingly similar to the Asserted Mark has been intentional and willful.  Defendants' bad faith is evidenced, in part, by the egregious and prominent use of the TOPLINE mark in connection with the sale and promotion of a CRM platform, which it adopted with knowledge of Plaintiff's nearly identical mark.  Because of the willful nature of Defendants' wrongful acts, Plaintiff is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

31.     Because this is an exceptional case, Plaintiff is also entitled to recover its costs of suit and its attorneys' fees pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION
## INJURY TO BUSINESS REPUTATION; DILUTION

(New York General Business Law § 360-L)

32.     Plaintiff realleges and incorporates by reference the averments of the preceding paragraphs as though fully set forth herein.

33.     Plaintiff on behalf of itself and the general consuming public, seeks recovery from Defendants for violation of New York's Anti-Dilution Statute, N.Y. Gen. Bus. Law § 360-L.

34.     The Asserted Mark is distinctive as well as commercially and conceptually strong and as a result has acquired a secondary meaning capable of dilution, in New York and across the country, prior to Defendants' acts as alleged herein.

35.      Defendants unauthorized and wrongful use of the Asserted Mark has diluted and will, unless enjoined, continue to dilute, and is likely to dilute the distinctive quality of Plaintiff's

Asserted Mark, thereby diminishing the capacity of its Asserted Mark to function as a unique identifier of its services.

36. Defendants' unauthorized and wrongful use of Plaintiff's Asserted Mark has tarnished and will, unless enjoined, continue to tarnish, and is likely to tarnish Plaintiff's Asserted Mark by creating negative associations with Plaintiff, its Asserted Mark, and the associated business reputation and good will.

37. Defendants' acts as alleged herein are intentional and willful in violation of New York's Anti-Dilution Statute, N.Y. Gen. Bus. Law § 360-L, and have already caused Plaintiff irreparable damage and will, unless enjoined, continue to so damage Plaintiff, which has no adequate remedy at law.

### THIRD CAUSE OF ACTION
### COMMON LAW TRADEMARK INFRINGEMENT
### AND UNFAIR COMPETITION

38. Plaintiff realleges and incorporates by reference the averments of the preceding paragraphs as though fully set forth herein.

39. Through its extensive prior and continuous use of its Asserted Mark in commerce in New York and throughout the country, Plaintiff's Asserted Mark has become well known, and Plaintiff has been identified in the public mind as the source of its CRM platform and related services to which the Asserted Mark is applied.

40. Through its prior and continuous use of its Asserted Mark in commerce, Plaintiff enjoys exclusive common-law trademark rights in the TOPLINE PRO Mark.

41. Defendants, with knowledge and intentional disregard of Plaintiff's rights, have used in commerce, without Plaintiff's consent, a mark that is confusingly similar to Plaintiff's TOPLINE PRO Mark.  Defendants' use of a mark highly similar to Plaintiff's trademark is likely

to cause confusion, deception, or mistake among consumers as to the origin, source, sponsorship, affiliation, or approval by Plaintiff of Defendants' services, in violation of New York common law as preserved by New York General Business Law §§ 360-K and 360-O.

42. As a direct and proximate result of defendants' conduct, Plaintiff has and will continue to suffer damages and injury to its business and reputation and may sustain serious losses of revenue and profits. Plaintiff has already suffered monetary damages in an undetermined amount.

43. Defendants' conduct as described above constitutes common law trademark infringement and unfair competition and will, unless enjoined, damage Plaintiff, which has no adequate remedy at law.

44. Upon information and belief, Defendants committed the acts alleged herein knowingly, willfully, wantonly, oppressively, maliciously, and in conscious disregard of Plaintiff's rights, thereby entitling Plaintiff to exemplary and punitive damages in an amount sufficient to punish, deter, and make an example of Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

A. That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

  i. Using the TOPLINE Mark or any reproductions, counterfeits, copies or colorable imitations of the Asserted Mark in connection with the distribution, marketing, advertising, offer for sale and/or sale of any (i) any

        CRM products or related services, including, but not limited to those offered at the infringing <topline.com> website; and (ii) CRM products or services not authorized by Plaintiff to be sold in connection with the TOPLINE mark;

ii. committing any acts calculated to cause consumers to believe that Defendants' products and services are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

iii. further infringing the TOPLINE PRO Mark and damaging Plaintiff's goodwill;

iv. competing unfairly with Plaintiff in any manner; shipping, delivering, holding for sale, distributing, hosting, returning, transferring or otherwise moving, storing or disposing of in any manner products or services not authorized by Plaintiff to be sold or offered for sale, and that bear the TOPLINE mark or any reproductions or colorable imitations thereof;

v. using, linking to, transferring, selling, exercising control over, or otherwise owning or operating the <topline.com> website, or any other domain name that is being used to sell or is the means by which Defendants could continue to sell their infringing products and services; and

vi. operating and/or hosting websites at <topline.com> and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product or service bearing the TOPLINE mark or any reproduction or colorable

|      | |
|------|---|
| | imitation thereof that is not authorized by Plaintiff to be sold in connection with the TOPLINE mark. |
| B. | That Defendants, within ten (10) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner in which Defendant has complied with the injunctive relief set forth above. |
| C. | That Defendants account for and pay over to Plaintiff any and all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the Asserted Mark be increased by a sum not exceeding three times the amount thereof as provided by law by 15 U.S.C. § 1117. |
| D. | Awarding Plaintiff monetary relief, including Plaintiff's actual damages, Defendants' profits, and Plaintiff's lost profits for violations of 15 U.S.C. § 1125(a) and New York law in an amount to be determined; |
| | i.  for incidental and consequential damages; |
| | ii. for interest on the sum at the legal rate; |
| | iii. for punitive and exemplary damages; and |
| | iv. that Plaintiff be awarded its reasonable attorneys' fees and costs. |
| E. | Granting Plaintiff such other and further legal relief as may be just and proper. |

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury of all issues so triable.

-13-

                    Respectfully submitted,

Dated: March 27, 2023              WILSON SONSINI GOODRICH & ROSATI
                                          Professional Corporation

                    *s/ Eli B. Richlin*

                    Eli B. Richlin
                    1301 6th Avenue, 40th Floor
                    New York, New York 10019
                    Telephone: (212) 999-5800
                    Facsimile: (212) 999-5899
                    Email: erichlin@wsgr.com

                    *Attorneys for Plaintiff*
                    *Topline Pro*